# EXHIBIT 1

# SETTLEMENT AGREEMENT

This Settlement Agreement ("Agreement") is entered into among the United States of America, acting through the United States Department of Justice and on behalf of the Office of Inspector General (OIG-HHS) of the Department of Health and Human Services (HHS) (collectively, the "United States"), the State of Connecticut, acting through the Attorney General of the State of Connecticut (the "State of Connecticut"), and Med Tech LLC ("Med Tech") and its owner Thomas Macre, Sr. ("Macre") (hereafter collectively referred to as "the Parties"), through their authorized representatives.

## RECITALS

A. Macre owns and operates medical equipment supplier Med Tech in Orange, Connecticut. Med Tech is enrolled as a provider in the Medicare Program and the Connecticut Medical Assistance Program ("CMAP"), which includes the Connecticut Medicaid program. The CMAP is administered by the State of Connecticut Department of Social Services ("DSS").

B. The United States and the State of Connecticut contend that Med Tech and Macre submitted or caused to be submitted claims for payment to the Medicaid Program, 42 U.S.C. §§ 1396-1396w-5 ("Medicaid").

C. The United States and the State of Connecticut contend that they have certain civil claims against Med Tech LLC and its owner Thomas Macre, Sr. arising from Med Tech and Macre's improper billing of durable medical equipment and supplies to Medicaid in violation of both the federal False Claims Act and State of Connecticut False Claims Act during the period from January 1, 2011 through June 1, 2017. The United States and the State of Connecticut contend Med Tech and Macre billed Medicaid for back braces and electrical stimulation unit supplies that were not provided and/or were not medically necessary. That conduct is referred to below as the "Covered Conduct."

D. This Settlement Agreement is neither an admission of liability by Med Tech or Macre nor a concession by the United States or the State of Connecticut that its claims are not well founded.

To avoid the delay, uncertainty, inconvenience, and expense of protracted litigation of the above claims, and in consideration of the mutual promises and obligations of this Settlement Agreement, the Parties agree and covenant as follows:

TERMS AND CONDITIONS

1. Med Tech and Macre agree to pay the United States and the State of Connecticut the sum of Four Hundred Sixty-Seven Thousand, Ninety Dollars ($467,090) (the "Settlement Amount"), of which $350,104.96 is restitution. Med Tech and Macre agree the Settlement Amount will be satisfied as follows:

a. Med Tech and Macre hereby agree that the State of Connecticut shall retain the Medicaid funds that have been suspended and/or retained by the State of Connecticut, in the amount of Two Hundred Seventeen Thousand, Three Hundred Fifty-Two Dollars and Fifty-Nine Cents ($217,352.59) (the "Suspended Amounts") forevermore. Med Tech and Macre expressly relinquishes any and all rights of any kind that they may have with respect to the Suspended Amounts, including, but not limited to: any and all claims or rights to have an overpayment determined by the DSS audit process as described in Conn. Gen. Stat. §17b-99, any and all rights to payment of those funds, and any and all rights to appeal, whether formally or informally and whether administratively or judicially, the right of the State of Connecticut and/or the United States to retain those funds, and any other rights Med Tech and Macre may have to challenge the Withholding or the Suspension of the Suspended Amounts in any respect. Med Tech and Macre further agree to execute any documents necessary to effectuate the release of their right, title, and interest in the Suspended Amounts.

b. Med Tech and Macre hereby agree to pay to the United States and the State of Connecticut Thirty-Two Thousand, Six Hundred Forty-Seven Dollars and Forty-One Cents ($32,647.41) by electronic funds transfer, pursuant to written instructions to be provided by The Office of the United States Attorney for the District of Connecticut, no later than five days after the Effective Date of this Agreement.

c. Over a period of three (3) years, Med Tech and Macre will pay the remaining Two Hundred Seventeen Thousand, Ninety Dollars ($217,090), plus interest at 3% compounded monthly, pursuant to a promissory note (Note) in the form of Exhibit A that Med Tech and Macre agree to execute contemporaneously with this Settlement Agreement. The Note shall be secured pursuant to a Stipulated Judgment, in the form attached hereto as Exhibit B that Med Tech and Macre agree to execute contemporaneously with this Settlement Agreement. The United States and the State of Connecticut will hold the Stipulated Judgment in escrow and will not file the Stipulated Judgment with the Court unless and until there is an event of Default, as set forth in Paragraph 4, below. Upon default, the United States and/or the State of Connecticut may, at their sole option, without further notice, file a civil complaint, and file the Stipulated Judgment with the Court. In the event that the Stipulated Judgment is filed with the Court, Med Tech and Macre agree not to oppose the entry of judgment against them. Interest shall accrue on the unpaid Settlement Amount as indicated in the Note. Collectively the Settlement Amount and interest received by the United States shall be referred to as the “Settlement Proceeds.”

2. Conditioned upon Med Tech and Macre’s full payment of the Settlement Amount, subject to the exceptions in Paragraph 8 (concerning excluded claims) below, and subject to Paragraph 18, below (concerning bankruptcy proceedings commenced within 91 days of the Effective Date of this Settlement Agreement or any payment made under this Settlement Agreement), the United States releases Med Tech and Macre from any civil or administrative

monetary claim the United States has for the Covered Conduct under the False Claims Act, 31 U.S.C. §§ 3729-3733; the Civil Monetary Penalties Law, 42 U.S.C. § 1320a-7a; the Program Fraud Civil Remedies Act, 31 U.S.C. §§ 3801-3812; or the common law theories of payment by mistake, unjust enrichment, and fraud.

3.      Conditioned upon Med Tech and Macre's full payment of the Settlement Amount, subject to the exceptions in Paragraph 8 (concerning excluded claims) below, and subject to Paragraph 18, below (concerning bankruptcy proceedings commenced within 91 days of the Effective Date of this Settlement Agreement or any payment made under this Settlement Agreement), the State of Connecticut releases Med Tech and Macre from any civil claims the State of Connecticut has, or could have asserted for the Covered Conduct under Section 4-275 et seq. of the Connecticut General Statutes (Connecticut False Claims Act) and the common law theories of breach of contract, payment by mistake, unjust enrichment, and fraud.

4.      Med Tech and Macre shall be deemed in "Default" of this Settlement Agreement if Med Tech and Macre fail to pay any portion of the Settlement Amount, including the Settlement Proceeds provided in Paragraph 1 and its subparagraphs of the Settlement Agreement and/or the Note attached hereto as Exhibit A, within five (5) days of the due date upon which each such payment is due.

5.      In the event that Med Tech and Macre fail to pay any amounts due pursuant to this Settlement Agreement, the United States and/or the State of Connecticut agree that they will provide written Notice of the Default and an opportunity for Med Tech and Macre to cure said Default within five (5) business days of receipt of this notice. Notice of the Default will be sent by first class mail, addressed to the attorney for Med Tech and Macre, Brad Howard of Brown & Fortunato, P.C., 905 S. Fillmore, Suite 400, Amarillo, Texas 09418. Upon Default, which is not cured within five (5) business days of receipt of the Notice of Default, as set forth above, the full

settlement amount will become immediately due and payable, and interest on the remaining

unpaid balance shall thereafter accrue at the rate of 12% per annum, compounded daily from the

date of Default, on the remaining unpaid total (principal and interest balance). In the event of

Default, the United States and/or the State of Connecticut, at their sole discretion, may (a) take

any action to execute and collect on the Stipulated Judgment against Med Tech and/or Macre; (b)

declare this Settlement Agreement breached, and proceed against Med Tech and/or Macre for

any claims, including those to be released by this Settlement Agreement; (c) file an action for

specific performance of the Settlement Agreement and/or the Stipulated Judgment; (d) offset the

remaining unpaid balance, inclusive of interest, from any amounts due and owing to Med Tech

and/or Macre by any department, agency, or agent of the United States or the State of

Connecticut at the time of Default; (e) exercise any other right granted by law, or under the terms

of this Settlement Agreement, or recognizable at common law or in equity.

Med Tech and Macre agree not to contest any offset imposed and not to contest any

collection action undertaken by the United States or the State of Connecticut pursuant to this

Paragraph, either administratively or in any state or federal court, except on the grounds of actual

payment to the United States or the State of Connecticut. In the event of Default, as defined

above, and at their sole option, the United States and the State of Connecticut alternatively may

rescind this Settlement Agreement and bring any civil and/or administrative claim, action, or

proceeding against Med Tech and/or Macre for the claims that would otherwise be covered by

the releases provided in Paragraphs 2 and 3, above. In the event that the United States or the

State of Connecticut opt to rescind this Settlement Agreement pursuant to this Paragraph, Med

Tech and Macre agree not to plead, argue, or otherwise raise any defenses of statute of

limitations, laches, estoppel or similar theories, to any civil or administrative claims that are (a)

filed by the United States or the State of Connecticut against Med Tech and/or Macre within 120

days of written notification that this Settlement Agreement has been rescinded, and (b) relate to the Covered Conduct, except to the extent these defenses were available on or before the Effective Date of this Settlement Agreement.

6.      In the event of a Default as defined in Paragraph 4, above, which is not cured by Med Tech and Macre pursuant to Paragraph 5, OIG-HHS may exclude Med Tech and Macre from participating in all Federal health care programs until Med Tech and Macre pay the Settlement Amount as set forth in Paragraph 1, above. OIG-HHS will provide written notice of any such exclusion to Med Tech and Macre. Med Tech and Macre waive any further notice of the exclusion under 42 U.S.C. § 1320a-7(b)(7), and agree not to contest such exclusion either administratively or in any state or federal court. Reinstatement to program participation is not automatic. If at the end of the period of exclusion Med Tech and/or Macre want to apply for reinstatement, Med Tech and Macre must each submit a written request for reinstatement to OIG-HHS in accordance with the provisions of 42 C.F.R. §§ 1001.3001-.3005. Med Tech and/or Macre will not be reinstated unless and until OIG-HHS approves such request for reinstatement.

7.      In the event of a Default as defined in Paragraph 4, above, which is not cured by Med Tech and Macre pursuant to Paragraph 5, DSS may suspend Med Tech and Macre from participating in all programs administered by the DSS until Med Tech and Macre pay the Settlement Amount as set forth in Paragraph 1, above. DSS will provide written notice of any such suspension to Med Tech and Macre. Med Tech and Macre waive any further notice of the suspension under Regs. Conn. State Agencies § 17-83k-4a, and agree not to contest such suspension either administratively or in any state or federal court. Reinstatement to program participation is not automatic. If at the end of the period of suspension Med Tech and/or Macre want to apply for reinstatement, Med Tech and Macre must each submit a written request for reinstatement to DSS in accordance with the provisions of Regs., Conn. State Agencies § 17-

83k-7. Med Tech and/or Macre will not be reinstated unless and until DSS approves such request for reinstatement.

8.    Notwithstanding the releases given in Paragraphs 2 and 3 of this Settlement Agreement, or any other term of this Settlement Agreement, the following claims of the United States and the State of Connecticut are specifically reserved and are not released:

a.    Any liability arising under Title 26, U.S. Code (Internal Revenue Code);

b.    Any liability arising under the laws and regulations that are administered and enforced by the State of Connecticut Department of Revenue Services;

c.    Any criminal liability;

d.    Except as explicitly stated in this Settlement Agreement, any administrative liability, including mandatory or permissive exclusion from Federal health care programs;

e.    Except as explicitly stated in this Settlement Agreement, any administrative liability to the DSS, including suspension from all programs administered by the DSS;

f.    Any liability to the United States or the State of Connecticut (or their respective agencies) for any conduct other than the Covered Conduct;

g.    Any liability based upon obligations created by this Settlement Agreement.

9.    Med Tech and Macre have provided sworn financial disclosure statements (Financial Statements) to the United States and the State of Connecticut, and the United States and the State of Connecticut have relied on the accuracy and completeness of those Financial Statements in reaching this Settlement Agreement. Med Tech and Macre warrant that the

Financial Statements are complete, accurate, and current. If the United States or the State of

Connecticut learns of asset(s) in which Med Tech and/or Macre had an interest at the time of this

Settlement Agreement that were not disclosed in the Financial Statements, or if the United States

or the State of Connecticut learns of any misrepresentation by Med Tech or Macre on, or in

connection with, the Financial Statements, and if such nondisclosure or misrepresentation

changes the estimated net worth set forth in the combined Financial Statements by $10,000 or

more, the United States or the State of Connecticut may at its option: (a) rescind this Settlement

Agreement and file suit based on the Covered Conduct, or (b) let the Settlement Agreement stand

and collect the full Settlement Amount plus one hundred percent (100%) of the value of the net

worth of Med Tech and/or Macre previously undisclosed. Med Tech and Macre agree not to

contest any collection action undertaken by the United States or the State of Connecticut

pursuant to this provision, and immediately to pay the United States or the State of Connecticut

all reasonable costs incurred in such an action, including attorney's fees and expenses.

10.     In the event that the United States or the State of Connecticut, pursuant to

Paragraph 9 (concerning disclosure of assets), above, opts to rescind this Settlement Agreement,

Med Tech and Macre agree not to plead, argue, or otherwise raise any defenses under the

theories of statute of limitations, laches, estoppel, or similar theories, to any civil or

administrative claims that (a) are filed by the United States or the State of Connecticut within 30

calendar days of written notification to Med Tech and Macre that this Settlement Agreement has

been rescinded, and (b) relate to the Covered Conduct, except to the extent these defenses were

available on the Effective Date of this Settlement Agreement.

11.     Med Tech and Macre waive and shall not assert any defenses Med Tech and/or

Macre may have to any criminal prosecution or administrative action relating to the Covered

Conduct that may be based in whole or in part on a contention that, under the Double Jeopardy

Clause in the Fifth Amendment of the Constitution, or under the Excessive Fines Clause in the Eighth Amendment of the Constitution, this Settlement Agreement bars a remedy sought in such criminal prosecution or administrative action. Nothing in this paragraph or any other provision of this Settlement Agreement constitutes an agreement by the State of Connecticut concerning the characterization of the Settlement Amount for the purposes of the laws and regulations administered and enforced by the Connecticut Department of Revenue Services.

12.     Med Tech and Macre fully and finally release the United States, the State of Connecticut, their respective agencies, officers, agents, employees, and servants, from any claims (including attorney's fees, costs, and expenses of every kind and however denominated) that Med Tech or Macre has asserted, could have asserted, or may assert in the future against the United States, the State of Connecticut, their respective agencies, officers, agents, employees, and servants related to the Covered Conduct and the United States' and the State of Connecticut's investigation and prosecution thereof.

13.     The Settlement Amount shall not be decreased as a result of the denial of claims for payment now being withheld from payment by any Medicare contractor (e.g., Medicare Administrative Contractor, fiscal intermediary, carrier) or the DSS, related to the Covered Conduct; and Med Tech and Macre agree not to resubmit to any Medicare contractor or to the DSS any previously denied claims related to the Covered Conduct, agrees not to appeal any such denials of claims, and agrees to withdraw any such pending appeals.

14.     Med Tech and Macre agree to the following:

a.     Unallowable Costs Defined: All costs (as defined in the Federal Acquisition Regulation, 48 C.F.R. § 31.205-47; and in Titles XVIII and XIX of the Social Security Act, 42 U.S.C. §§ 1395-1395kkk-1 and 1396-1396w-5; and the regulations and official

program directives promulgated thereunder) incurred by or on behalf of Med Tech and Macre, their present or former employees and agents in connection with:

(1) the matters covered by this Settlement Agreement**;**

(2) the United States' and the State of Connecticut's audit(s) and civil investigation(s) of the matters covered by this Settlement Agreement;

(3) Med Tech or Macre's investigation, defense, and corrective actions undertaken in response to the United States' and the State of Connecticut's audit(s) and civil investigation(s) in connection with the matters covered by this Settlement Agreement (including attorney's fees);

(4) the negotiation and performance of this Settlement Agreement; and

(5) the payment Med Tech and Macre makes to the United States and the State of Connecticut pursuant to this Settlement Agreement

are unallowable costs for government contracting purposes and under the Medicare Program, Medicaid Program, TRICARE Program, and Federal Employees Health Benefits Program (FEHBP) (hereinafter referred to as Unallowable Costs).

b. Future Treatment of Unallowable Costs: Unallowable Costs shall be separately determined and accounted for by Med Tech and Macre, and Med Tech and Macre shall not charge such Unallowable Costs directly or indirectly to any contracts with the United States or any State Medicaid program, or seek payment for such Unallowable Costs through any cost report, cost statement, information statement, or payment request submitted by Med Tech or Macre or any of their affiliates to the Medicare, Medicaid, TRICARE, or FEHBP Programs.

c. Treatment of Unallowable Costs Previously Submitted for Payment: Med Tech and Macre further agree that within 90 days of the Effective Date of this Settlement Agreement they shall identify to applicable Medicare and TRICARE fiscal intermediaries,

carriers, and/or contractors, and Medicaid and FEHBP fiscal agents, any Unallowable Costs (as defined in this Paragraph) included in payments previously sought from the United States, or any State Medicaid program, including, but not limited to, payments sought in any cost reports, cost statements, information reports, or payment requests already submitted by Med Tech or Macre or any of their affiliates, and shall request, and agree, that such cost reports, cost statements, information reports, or payment requests, even if already settled, be adjusted to account for the effect of the inclusion of the unallowable costs. Med Tech and Macre agree that the United States and the State of Connecticut, at a minimum, shall be entitled to recoup from Med Tech and Macre any overpayment plus applicable interest and penalties as a result of the inclusion of such Unallowable Costs on previously-submitted cost reports, information reports, cost statements, or requests for payment.

Any payments due after the adjustments have been made shall be paid to the United States and the State of Connecticut pursuant to the direction of the Department of Justice and/or the affected agencies. The United States and the State of Connecticut reserve their rights to disagree with any calculations submitted by Med Tech or Macre or any of their affiliates on the effect of inclusion of Unallowable Costs (as defined in this Paragraph) on Med Tech or Macre or any of their affiliates' cost reports, cost statements, or information reports.

        d.      Nothing in this Settlement Agreement shall constitute a waiver of the rights of the United States or the State of Connecticut to audit, examine, or re-examine Med Tech and Macre's books and records to determine that no Unallowable Costs have been claimed in accordance with the provisions of this Paragraph.

15.     This Settlement Agreement is intended to be for the benefit of the Parties only. The Parties do not release any claims against any other person or entity, except to the extent provided for in Paragraph 16 (waiver for beneficiaries paragraph), below.

16.     Med Tech and Macre agree that they waive and shall not seek payment for any of the health care billings covered by this Settlement Agreement from any health care beneficiaries or their parents, sponsors, legally responsible individuals, or third party payors based upon the claims defined as Covered Conduct.

17.     Med Tech and Macre warrant that they have reviewed their financial situation and that currently they are solvent within the meaning of 11 U.S.C. §§ 547(b)(3) and 548(a)(1)(B)(ii)(I), and shall remain solvent following payment to the United States and the State of Connecticut of the Settlement Amount. Further, the Parties warrant that, in evaluating whether to execute this Settlement Agreement, they (a) have intended that the mutual promises, covenants, and obligations set forth constitute a contemporaneous exchange for new value given to Med Tech and Macre, within the meaning of 11 U.S.C. § 547(c)(1), and (b) conclude that these mutual promises, covenants, and obligations do, in fact, constitute such a contemporaneous exchange. Further, the Parties warrant that the mutual promises, covenants, and obligations set forth herein are intended to and do, in fact, represent a reasonably equivalent exchange of value that is not intended to hinder, delay, or defraud any entity to which Med Tech or Macre was or became indebted to on or after the date of this transfer, within the meaning of 11 U.S.C. § 548(a)(1).

18.     If within 91 days of the Effective Date of this Settlement Agreement or of any payment made under this Settlement Agreement, Med Tech or Macre commences, or a third party commences, any case, proceeding, or other action under any law relating to bankruptcy, insolvency, reorganization, or relief of debtors (a) seeking to have any order for relief of Med Tech or Macre's debts, or seeking to adjudicate Med Tech or Macre as bankrupt or insolvent; or (b) seeking appointment of a receiver, trustee, custodian, or other similar official for Med Tech

or Macre or for all or any substantial part of Med Tech or Macre's assets, Med Tech and Macre

agree as follows:

a.      Med Tech and Macre's obligations under this Settlement Agreement may

not be avoided pursuant to 11 U.S.C. § 547, and Med Tech and Macre shall not argue or

otherwise take the position in any such case, proceeding, or action that: (i) Med Tech or Macre's

obligations under this Settlement Agreement may be avoided under 11 U.S.C. § 547; (ii) Med

Tech or Macre was insolvent at the time this Settlement Agreement was entered into, or became

insolvent as a result of the payment made to the United States or the State of Connecticut; or (iii)

the mutual promises, covenants, and obligations set forth in this Settlement Agreement do not

constitute a contemporaneous exchange for new value given to Med Tech or Macre.

b.      If Med Tech or Macre's obligations under this Settlement Agreement are

avoided for any reason, including, but not limited to, through the exercise of a trustee's

avoidance powers under the Bankruptcy Code, the United States and the State of Connecticut, at

their sole option, may rescind the releases in this Settlement Agreement and bring any civil

and/or administrative claim, action, or proceeding against Med Tech or Macre for the claims that

would otherwise be covered by the releases provided in Paragraphs 2 and 3, above. Med Tech

and Macre agree that (i) any such claims, actions, or proceedings brought by the United States

and the State of Connecticut are not subject to an "automatic stay" pursuant to 11 U.S.C. §

362(a) as a result of the action, case, or proceedings described in the first clause of this

Paragraph, and Med Tech and Macre shall not argue or otherwise contend that the United States'

and the State of Connecticut's claims, actions, or proceedings are subject to an automatic stay;

(ii) Med Tech and Macre shall not plead, argue, or otherwise raise any defenses under the

theories of statute of limitations, laches, estoppel, or similar theories, to any such civil or

administrative claims, actions, or proceeding that are brought by the United States and the State

of Connecticut within 30 calendar days of written notification to Med Tech and Macre that the releases have been rescinded pursuant to this Paragraph, except to the extent such defenses were available on the Effective Date of this Settlement Agreement; and (iii) the United States and the State of Connecticut have a valid claim against Med Tech and Macre in the amount of $1,050,314.88 and the United States and the State of Connecticut may pursue their claim in the case, action, or proceeding referenced in the first clause of this Paragraph, as well as in any other case, action, or proceeding.

        c.    Med Tech and Macre acknowledge that their agreements in this Paragraph are provided in exchange for valuable consideration provided in this Settlement Agreement.

    19.    Each Party shall bear its own legal and other costs incurred in connection with this matter, including the preparation and performance of this Settlement Agreement.

    20.    Each party and signatory to this Settlement Agreement represents that it freely and voluntarily enters in to this Settlement Agreement without any degree of duress or compulsion.

    21.    This Settlement Agreement is governed by the laws of the United States and the State of Connecticut. The exclusive jurisdiction and venue for any dispute relating to this Settlement Agreement is the United States District Court for the District of Connecticut, except disputes only between the State of Connecticut and Med Tech or Macre will be resolved in Superior Court for the Judicial District of Hartford, Connecticut. For purposes of construing this Settlement Agreement, this Settlement Agreement shall be deemed to have been drafted by all Parties to this Settlement Agreement and shall not, therefore, be construed against any Party for that reason in any subsequent dispute.

22.    This Settlement Agreement constitutes the complete agreement between the Parties. This Settlement Agreement may not be amended except by written consent of the Parties.

23.    The undersigned counsel represent and warrant that they are fully authorized to execute this Settlement Agreement on behalf of the persons and entities indicated below.

24.    This Settlement Agreement may be executed in counterparts, each of which constitutes an original and all of which constitute one and the same Settlement Agreement.

25.    This Settlement Agreement is binding on Med Tech and Macre's successors, transferees, heirs, and assigns.

26.    All parties consent to the United States' and the State of Connecticut's disclosure of this Settlement Agreement, and information about this Settlement Agreement, to the public.

27.    This Settlement Agreement is effective on the date of signature of the last signatory to the Settlement Agreement (Effective Date of this Agreement). Facsimiles and electronic transmissions of signatures shall constitute acceptable, binding signatures for purposes of this Settlement Agreement.

THE UNITED STATES OF AMERICA

DATED: 3-5-19 BY: John B. Hughes

JOHN B. HUGHES
Assistant United States Attorney
Chief, Civil Division
District of Connecticut

DATED: 3/6/19 BY: Anne F. Thidemann

ANNE F. THIDEMANN
Assistant United States Attorney
District of Connecticut

DATED: ________ BY: ______________________________

LISA M. RE
Assistant Inspector General for Legal Affairs
Office of Counsel to the Inspector General
Office of Inspector General
United States Department of Health and Human Services

THE UNITED STATES OF AMERICA

DATED: __________ BY: ______________________________

JOHN B. HUGHES
Assistant United States Attorney
Chief, Civil Division
District of Connecticut

DATED: __________ BY: ______________________________

ANNE F. THIDEMANN
Assistant United States Attorney
District of Connecticut

DATED: 3/01/2019 BY: Lisa M Re

LISA M. RE
Assistant Inspector General for Legal Affairs
Office of Counsel to the Inspector General
Office of Inspector General
United States Department of Health and Human Services

THE STATE OF CONNECTICUT

WILLIAM TONG
ATTORNEY GENERAL

DATED: 3/4/19 BY: [signature]
MICHAEL E. COLE
Assistant Attorney General
Chief, Antitrust & Government Program Fraud Department

DATED: 3/4/2019 BY: [signature]
ROBERT B. TEITELMAN
Assistant Attorney General

**MED TECH, LLC**

DATED: 2/15/19 BY: Thomas Macre Sr

THOMAS MACRE SR.
Owner, Med Tech, LLC

DATED: 2/19/19 BY: [signature]

BRADLEY W. HOWARD, ESQ.
BROWN & FORTUNATO, P.C.
Counsel for Med Tech, LLC

**THOMAS MACRE SR.**

DATED: 2/15/19 BY: Thomas Macre Sr
THOMAS MACRE SR.

DATED: 2/19/19 BY: ______________________
BRADLEY W. HOWARD, ESQ.
BROWN & FORTUNATO, P.C.
Counsel for Thomas Macre Sr.

# EXHIBIT A

**Promissory Note**

For value received and pursuant to a Settlement Agreement dated March 6, 2019 attached hereto (Settlement Agreement), Med Tech LLC and its owner Thomas Macre, Sr. (collectively referred to as "Med Tech" or "Makers"), for themselves and their successors and assigns, promise to pay to the United States of America and the State of Connecticut ("Holders"), or their assignee, the full principal sum of $217,090, together with interest accruing at the rate of 3.00% per annum ("Outstanding Balance") as set forth below.

1. The total payment pursuant to the Settlement Agreement is $467,090. An initial payment shall be satisfied on the Effective Date of the Settlement Agreement by Med Tech's agreement that the State of Connecticut shall retain $217,352.59 suspended payments. Med Tech will make an initial payment of $32,647.41 within five days of the Effective Date of the Settlement Agreement. The Outstanding Balance of $217,090, plus interest on the $217,090 at the rate of 3.00%, shall be paid within thirty-six (36) months of the Effective Date of the Settlement Agreement according to the following schedule of payments:

Schedule of Payments (including interest)

| Payment No. | Due Date | Payment (monthly payments include interest at 3.0%) |
|---|---|---|
| initial | Within three (3) days of the Effective Date of the Settlement Agreement | 250,000 |
| 1 | 4/1/2019 | 6,313.24 |
| 2 | 5/1/2019 | 6,313.24 |
| 3 | 6/1/2019 | 6,313.24 |
| 4 | 7/1/2019 | 6,313.24 |
| 5 | 8/1/2019 | 6,313.24 |
| 6 | 9/1/2019 | 6,313.24 |
| 7 | 10/1/2019 | 6,313.24 |
| 8 | 11/1/2019 | 6,313.24 |
| 9 | 12/1/2019 | 6,313.24 |
| 10 | 1/1/2020 | 6,313.24 |
| 11 | 2/1/2020 | 6,313.24 |
| 12 | 3/1/2020 | 6,313.24 |
| 13 | 4/1/2020 | 6,313.24 |
| 14 | 5/1/2020 | 6,313.24 |
| 15 | 6/1/2020 | 6,313.24 |
| 16 | 7/1/2020 | 6,313.24 |
| 17 | 8/1/2020 | 6,313.24 |
| 18 | 9/1/2020 | 6,313.24 |
| 19 | 10/1/2020 | 6,313.24 |
| 20 | 11/1/2020 | 6,313.24 |
| 21 | 12/1/2020 | 6,313.24 |
| 22 | 1/1/2021 | 6,313.24 |
| 23 | 2/1/2021 | 6,313.24 |
| 24 | 3/1/2021 | 6,313.24 |

| | | |
|---|---|---|
| 25 | 4/1/2021 | 6,313.24 |
| 26 | 5/1/2021 | 6,313.24 |
| 27 | 6/1/2021 | 6,313.24 |
| 28 | 7/1/2021 | 6,313.24 |
| 29 | 8/1/2021 | 6,313.24 |
| 30 | 9/1/2021 | 6,313.24 |
| 31 | 10/1/2021 | 6,313.24 |
| 32 | 11/1/2021 | 6,313.24 |
| 33 | 12/1/2021 | 6,313.24 |
| 34 | 1/1/2022 | 6,313.24 |
| 35 | 2/1/2022 | 6,313.24 |
| 36 | 3/1/2022 | 6,313.24 |

2. Payments will be made by electronic funds transfer pursuant to written instructions to be provided by the United States Attorney's Office for the District of Connecticut. If there is any change in the method or instructions of payment, the Holders shall inform the Makers at least five (5) business days before payment is due.

3. This Note may be prepaid, in whole or in part, without penalty or premium. Partial payment does not alter the interest rate applicable each month as reflected in paragraph 1 of this Note.

4. Makers are in default of this Note on the date of occurrence of any of the following events ("Events of Default').

A. Any Event of Default that occurs as set forth in Paragraph 4 of the Settlement Agreement.

B. If Paragraph 9 of the Settlement Agreement is violated.

5. The Makers shall provide the United States written notice of an Event of Default within two (2) business days of such event by overnight mail, delivered to AUSA Anne Thidemann at the Office of the United States Attorney for the District of Connecticut (USAO), 1000 Lafayette Boulevard, 10th Floor, Bridgeport, CT 06604. The Makers shall provide the State of Connecticut written notice of an Event of Default within two (2) business days of such event by overnight mail, delivered to AAG Robert Teitelman at the Office of the Connecticut Attorney General, 55 Elm Street, P.O. Box 120, Hartford, CT 06106.

6. Upon the occurrence of an Event of Default, without further notice or presentment and demand by the United States or the State of Connecticut:

A. The Outstanding Balance shall become immediately due and payable ("Default Amount"). Interest shall accrue on the Default Amount from the date of the Event of Default at 12 per cent per annum, compounded daily.

B. The United States or the State of Connecticut may take any and all actions provided under law and equity, or provided by the Settlement Agreement, to collect the Outstanding Balance pursuant to this Note.

C. The United States and the State of Connecticut retain any and all other rights and remedies they have or may have under law and equity, and may exercise those rights and remedies.

D. No failure or delay on the part of the United States or the State of Connecticut to exercise any right or remedy shall operate as a waiver of the United States' or the State of Connecticut's rights. No partial or single exercise by the United States or the State of Connecticut of any right or remedy shall operate as a waiver of the United States' or the State of Connecticut's rights.

E. Makers will pay the United States and the State of Connecticut all reasonable costs of collection, including reasonable attorneys' fees and expenses.

7. Waiver by the Holders of any default by Makers, their successors, or assigns will not constitute a waiver of a subsequent default. Failure by the Holders to exercise any right, power, or privilege which they may have by reason of default will not preclude the exercise of such right, power, or privilege so long as such default remains uncured or if a subsequent default occurs.

8. This Note shall be governed and construed according to the laws of the United States of America and the State of Connecticut.

9. Makers acknowledge that they are entering into this Note freely, voluntarily and with no degree of compulsion whatsoever.

IN WITNESS THEREOF, Makers intending to be legally bound hereby and so bind their successors and assigns, has caused this Note to be executed, duly attested this 15, day of February, 2019

Dated: 2/15/19 BY: Thomas Macre, Sr.
Thomas Macre, Sr.

State of Connecticut :
: ss: ______

County of New Haven

Before me personally appeared Thomas Macre, Sr., signer and Sealer of the foregoing Instrument and acknowledge the same to be his free act and deed.

Tracy Raccio
Notary Public
My Commission Expires on August 31, 2023

TRACY MARIE RACCIO
Notary Public
Connecticut
My Commission Expires Aug 31, 2023

Dated: 2/15/19 BY: Thomas Macre Sr.
Thomas Macre, Sr.
On behalf of Med Tech, LLC

State of Connecticut :
: ss: ____________________

County of New Haven

Before me personally appeared Thomas Macre, Sr. as owner of Med Tech, LLC, signer and Sealer of the foregoing Instrument and acknowledge the same to be his free act and deed.

Tracy Raccio
Notary Public
My Commission Expires on August 31, 2023

TRACY MARIE RACCIO
Notary Public
Connecticut
My Commission Expires Aug 31, 2023

# EXHIBIT B

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA and THE STATE OF CONNECTICUT | ) | No. 3: |
| Plaintiffs, | ) | |
| v. | ) | STIPULATED JUDGMENT |
| Med Tech LLC and Thomas Macre, Sr. | ) | |
| Defendants. | ) | |

IT IS HEREBY STIPULATED AND AGREED, by and between the undersigned, that the parties have negotiated a settlement in the above-referenced matter, which settlement took effect on March 6, 2019 (the Settlement Agreement); and that

As part of that negotiated settlement, Med Tech LLC and Thomas Macre, Sr., pursuant to Fed. R. Civ. 54, hereby consent to entry of judgment against them, and in favor of the plaintiffs, the United States and the State of Connecticut, in the amount of Two Hundred Seventeen Thousand, Ninety Dollars ($217,090), plus interest of 3% per month on the unpaid balance beginning March 1, 2019, as set forth in the Settlement Agreement. A copy of the Settlement Agreement is attached as Exhibit A hereto, and is incorporated herein by reference.

The parties shall each bear their own costs, fees and expenses.

Respectfully submitted,

**ON BEHALF OF THE UNITED STATES**

JOHN H. DURHAM
UNITED STATES ATTORNEY

By: Anne F. Thidemann

ANNE F. THIDEMANN
ASSISTANT U.S. ATTORNEY
Federal Bar No. CT28028
1000 Lafayette Boulevard, 10th Floor
Bridgeport, Connecticut 06604
(203) 696-3045 (phone)
(203) 579-5575 (fax)
Anne.Thidemann@usdoj.gov

**ON BEHALF OF THE STATE OF CONNECTICUT**

WILLIAM TONG
ATTORNEY GENERAL

By: ______________________________

ROBERT B. TEITELMAN
Assistant Attorney General
Federal Bar No. CT 06413
55 Elm Street, P.O. Box 120
Hartford, Connecticut 06106
(860) 808-5040 (phone)
(860) 808-5391 (fax)
Robert.Teitelman@ct.gov

The parties shall each bear their own costs, fees and expenses.

Respectfully submitted,

**ON BEHALF OF THE UNITED STATES**

D
a
t
e

JOHN H. DURHAM
UNITED STATES ATTORNEY

By: ______________________________

ANNE F. THIDEMANN
ASSISTANT U.S. ATTORNEY
Federal Bar No. CT28028
1000 Lafayette Boulevard, 10th Floor
Bridgeport, Connecticut 06604
(203) 696-3045 (phone)
(203) 579-5575 (fax)
Anne.Thidemann@usdoj.gov

**ON BEHALF OF THE STATE OF CONNECTICUT**

WILLIAM TONG
ATTORNEY GENERAL

By: ______________________________

ROBERT B. TEITELMAN
Assistant Attorney General
Federal Bar No. CT 06413
55 Elm Street, P.O. Box 120
Hartford, Connecticut 06106
(860) 808-5040 (phone)
(860) 808-5391 (fax)
Robert.Teitelman@ct.gov

**ON BEHALF OF MED TECH LLC**

By: ______________________________

BRADLEY W. HOWARD, ESQ.
Brown & Fortunato, P.C.
Counsel for Med Tech LLC
Federal Bar No. 06786452
905 S. Fillmore, Suite 400
P.O. Box 9418
Amarillo, Texas 79105
(860) 345-6308 (phone)
(860) 345-6363 (fax)
rhoward@bf-law.com

**ON BEHALF OF THOMAS MACRE, SR.**

By: ______________________________

BRADLEY W. HOWARD, ESQ.
Brown & Fortunato, P.C.
Counsel for Med Tech LLC
Federal Bar No. 06786452
905 S. Fillmore, Suite 400
P.O. Box 9418
Amarillo, Texas 79105
(860) 345-6308 (phone)
(860) 345-6363 (fax)
rhoward@bf-law.com